**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*www.flsb.uscourts.gov*

In re:                                                                      Case No. 11-18959-BKC-LMI

EGBP, LLC,                                                          Chapter 11

      Debtor-In-Possession.
_____/

**DEBTOR'S EMERGENCY MOTION FOR ORDER (A) AUTHORIZING
THE DEBTOR (1) TO USE CASH COLLATERAL ON AN INTERIM BASIS
PURSUANT TO 11 U.S.C. §363, AND (2) TO PROVIDE ADEQUATE PROTECTION IN
CONNECTION THEREWITH PURSUANT TO 11 U.S.C. §361, AND (B) SETTING A
FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**(Emergency Hearing Requested Pursuant to Local Rule 9075-1)**

**Statement of Exigent Circumstances**

**The Debtor seeks to continue to operate its business, to preserve the value of its estate, and to facilitate a successful reorganization. Without the immediate authorization to use cash collateral, the Debtor will not be able to meet utility and maintenance obligations or to acquire materials and services for its day-to-day operations.**

**EGBP, LLC,** as debtor and debtor-in-possession ("EGBP" or "Debtor"), respectfully requests, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, 11 U.S.C. §§101 *et. seq.* (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure 4001(b) and 9014 (the "Bankruptcy Rules"), and Local Rules 9013-1(G) and 9075-1, entry of an order of the Court authorizing the use of cash, including cash collateral in which Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, National Association ("Wells Fargo" or "Lender") may claim an interest and the granting of adequate protection. In support of this Application, the Debtor relies upon the *Declaration of in Support of First Day Pleadings* (the "First Day Declaration") and respectfully represents the following:

Case No.  11-18929-BKC-LMI

## I. Jurisdiction

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this District pursuant to 28 U.S.C. § 108.

## II. Background

2. On April 1, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11, Title II, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

3. The Debtor is operating its business and managing its affairs as debtor and debtor-in-possession.  11 U.S.C. §§ 1107(a) and 1108.

4. The Debtor is engaged in the ownership and operation of a commercial warehouse/office project located in Loganville, Gwinnett County, Georgia.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

5. By this Motion the Debtor seeks the entry of an interim Order (the "Interim Order") authorizing, on an emergency and limited basis, use of "Cash Collateral" (as that term is defined in section 363(a) of the Bankruptcy Code).  The filing of this Motion does not constitute an admission by the Debtor that the Lender holds valid liens on the Debtor's cash.  The Debtor reserves the right to contest the validity, priority, and extent of the Lender's lien as well as the amount of the Lender's claims.

(a) The Debtor has financed the acquisition and development of its business primarily through one institutional lender:  Wells Fargo.

(b) The Debtor appears to be obligated to Wells Fargo for approximately $2.63 Million.

Case No.  11-18929-BKC-LMI

6. Any cash or cash equivalents, funds or proceeds (the "Cash Collateral") of or from rents (collectively, the "Collateral") generated by the Debtor may constitute the cash collateral of the Lender within the meaning of Section 363 of the Bankruptcy Code.  The Lender's financing purports to grant the Lender a security interest in the Collateral.

7. The Lender may assert an interest in Cash Collateral pursuant to the Lender's potential secured claims.

8. An immediate and critical need exists for the Debtor to be permitted access to Cash Collateral to continue to operate.  Therefore, the Debtor seeks an emergency preliminary hearing (the "Preliminary Hearing") in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures.  At the Preliminary Hearing, the Debtor will seek entry of an Interim Order.

9. By this Motion the Debtor further seeks a final hearing on this Motion to be held no less than fifteen (15) days from service of a notice of hearing on such final hearing, in accordance with Bankruptcy Rules 4001(b)(2) and (3).

10. The Debtor acknowledges that the Lender, assuming that it is properly secured and perfected in the Cash Collateral, may be entitled to adequate protection of its security interest in and lien on the Cash Collateral generated from the use of the Collateral after the Petition Date in accordance with 11 U.S.C. §§ 361 and 363.  In connection therewith and in an abundance of caution, the Debtor seeks the use of Cash Collateral in its operations and, as such, if necessary, it will provide adequate protection to the Lender pursuant to the terms hereof.

11. The Debtor proposes to use the Cash Collateral in accordance with the terms of that certain Budget prepared by the Debtor and attached hereto as **Exhibit "A"** (the "Budget"). The Debtor also requests that it be authorized: (i) to exceed any line item on the Budget by an

3

amount equal to ten (10%) percent of each such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

**A.     The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor Is Providing The Lender With Adequate Protection.**

12.     Pursuant to the terms hereof, the Debtor shall provide and will provide adequate protection to the Lender as contemplated and required by sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof.  The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property.  *See* 11 U.S.C. § 361.  What constitutes adequate protection must be evaluated on a case-by-case basis.  *See In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*citing In re O'Connor*, 808 F.2d 393, 1396-97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

13.     Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained.  *Swedeland*, 16 F.3d at 564 (*citing O'Connor*, 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy").  Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D.Or. 1982).  The focus of the requirement is to protect a secured creditor from diminution in value during the use period.  *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich.

Case No.   11-18929-BKC-LMI

1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

14. The Debtor's requested use of Cash Collateral and the protections afforded to the Lender herein, including but not limited to the potential granting of an administrative claim, replacement lien, and reporting, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lender's collateral.

**(i)    The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value, Which Will Inure to the Benefit of the Lender and All Other Creditors.**

15. The continued operation of the Debtor's business will preserve its going-concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a Chapter 11 plan.  However, as discussed above, if the Debtor is not allowed to use Cash Collateral, it will be unable to operate and will likely shutdown, and the Debtor will lose its clients and deteriorate in value.

16. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern.

17. A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.  *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

5

18.     Accordingly, courts authorize the use of cash collateral to enhance or preserve the Debtor's going-concern value.  For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtors' business.  *Id*. at 460; *see also Fed. Nat. Mortgage Ass'n. v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re Dynaco Corp.,*162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtor can use cash collateral in the normal operation of their business).

19.     As discussed above, the Debtor will use Cash Collateral in the ordinary course of operating its business to, among other things, pay employees, and operating expenses.  If the Debtor cannot continue to use Cash Collateral, it will be forced to cease operations, which will severely disrupt the Debtor's entire operations.  This cessation would irreparably damage the Debtor's business by causing, among other things, employee attrition, lost revenues, and loss of business reputation.  By contrast, granting authority will allow the Debtor to maintain operations

Case No. 11-18929-BKC-LMI

and preserve the going concern value of its business which will inure to the benefit of the Lender and all other creditors.

### (ii) The Lender Is Adequately Protected by the Administrative Priority Granted under Section 507(b) of the Bankruptcy Code.

20. If the adequate protection described herein proves inadequate, as determined by the Court after notice and hearing, then to that extent, the Lender will be granted an allowed administrative expense claim having the priority specified in Section 507(b) of the Bankruptcy Code.

21. The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects RBC. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of Cash Collateral; (ii) providing the Lender with the other protections set forth herein, including the availability of financial reporting; and (iii) granting administrative priority under Section 507(b) of the Bankruptcy Code, adequately protects the Lender's secured positions under § 361(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of Lender's Cash Collateral is proper herein.

### Notice

22. No trustee or examiner has been appointed in these cases and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code. Notice of this Motion shall be given via the Court's CM/ECF system to the Office of the United States Trustee for the Southern District of Florida, and by U.S. first-class mail to the Debtor's primary

**Case No. 11-18929-BKC-LMI**

secured creditor and the 20 largest unsecured creditors. The Debtor submits that, given the nature of the relief requested herein, no other or further notice need to be given.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(a) authorizing the Debtor to use the Cash Collateral of the Lender pursuant to the terms set forth above and in accordance with the Budget;

(b) setting a final hearing hereon fifteen (15) days after the entry of an interim order on this Motion; and

(c) for such other and further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served by either electronic mail or regular U.S. Mail this 1st day of April, 2011, to all parties listed on the attached Service List and as described in the above Notice, and served via CM/ECF upon the Office of the U.S. Trustee, 51 Southwest First Avenue, 12th Floor, Miami, FL 33130.

Dated: April 1, 2011.

> PAUL L. ORSHAN, P.A.
> *Proposed Counsel for Debtor*
> 2506 Ponce de Leon Boulevard
> Coral Gables, Florida 33134
> Telephone: (305) 529-9380
> Facsimile: (305) 402-0777
> *paul@orshanpa.com*
>
> By: */s/ Paul L. Orshan*
>         Paul L. Orshan, Esq.
>         Florida Bar No.: 776203

8

Case No. 11-18929-BKC-LMI

**SERVICE LIST**

Secured Creditor:

Wells Fargo Bank, N.A.
Lender
171 17th Street, N.W., Suite 1100
Atlanta, GA 30363

Eric S. Golden, Esq.
Burr & Forman, LLP
Counsel for Lender
450 S. Orange Avenue, Suite 200
Orlando, FL 32801

20 Largest Unsecured Creditors:

A. Todd Merolla, Esq.
Merolla & Gold, LLP
2018 Powers Ferry Road
Suite 800
Atlanta, GA 30339

Adams Backflow
Division of J. Adams Co., Inc.
PO Box 1109
Flowery Branch, GA 30542

City of Lawrenceville
70 S. Clayton Street
PO Box 2200
Lawrenceville, GA 30046-2200

City of Loganville
Real Estate Taxes
PO Box 39
Loganville, GA 30052-0039

Gwinnett County Dept Water Resources
684 Winder Highway
PO Box 530575
Lawrenceville, GA 30045-5012

Gwinnett County Tax Commissioner
PO Box 372
Lawrenceville, GA 30046

HB Lands Real Estate
Attn.: D. Breedlove
155 Banker's Blvd
Bldg F Suite 100
Monroe, GA 30655

Hollis Insurance Agency
980 N Federal Highway # 420
Boca Raton, FL 33432-2712

I.J. Kapplin, LLC
Clynn Carden Stotz, Broker
4124 Steve Reynolds Blvd
Norcross, GA 30093

King Industrial Realty, Inc.
PO Box 934014
Atlanta, GA 31193-4014

Ron Robbins
Cornerstone Commercial Assoc Ltd
6767 N. Wickham Rd #400
Melbourne, FL 32940

Ruff Riders Gwinnett County
3360 Newburn St
Lilburn, GA 30047

Travelers Insurance
The Insuring Co.-Hollis Insurance Agency
PO Box 26385
Richmond, VA 23260-6385

Walton EMC
PO Box 1347
Monroe, GA 30655-2505